IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PACMOORE PRODUCTS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 22 C 5919 |
| ) | |
| FIFTH THIRD BANK, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

PacMoore Products, Inc. has sued Fifth Third Bank on a claim arising from a wire transfer made on May 17, 2022. The wire transfer, which was intended to go to the account of PacMoore's president William Moore, was instead diverted to the account of a hacker. PacMoore alleges that, in violation of the Illinois Uniform Commercial Code, Fifth Third sent the transfer without proper authorization. Fifth Third has moved to dismiss for failure to state a claim. Fifth Third contends that PacMoore's complaint effectively admits that the transfer was authorized and thus that Fifth Third is not liable in connection with the diversion. For the reasons stated below, the Court grants Fifth Third's motion to dismiss.

### Background

The Court takes the following facts from the allegations in PacMoore's amended complaint. For many years, PacMoore held its corporate bank accounts with Fifth Third at its location in Chicago. Before September 2021, PacMoore and Fifth Third had an

agreement in place that all wire transfers from a PacMoore bank account required dual authority and approval of two persons, with one of the approvals required to come from PacMoore's president, William Moore.

At the end of September 2021, a related company also owed by Moore, PacMoore Process Technologies, LLC (PPT), sold substantially all of its assets to an unrelated entity called Glanbia. PPT had its own, separate bank account(s) at Fifth Third.

PacMoore alleges that sometime after the sale of the PPT assets, and without the approval of Moore and PacMoore, Fifth Third unilaterally changed the agreed-upon authorization process required for wire transfers from both PPT's and PacMoore's bank accounts. Specifically, Fifth Third designated Kenneth Tatina, Glanbia's controller but not an employee of PacMoore, as the single approver for wire transfers from both PPT's and PacMoore's accounts. PacMoore alleges that neither Moore nor anyone else at PacMoore approved this change.

Moore discovered Fifth Third's unilateral change on February 1, 2022. PacMoore alleges that Moore immediately e-mailed Mark Staunton, an executive vice president at Fifth Third and PacMoore's primary contact there, seeking an explanation for the unapproved change. According to PacMoore, Staunton did not respond. PacMoore alleges that Moore sent Staunton another re-mail on February 7, 2022, stating that the changes Fifth Third made regarding PacMoore's account were without his consent and stating all wire transfers had to be approved by both Tatina *and* Moore.

Staunton responded on February 9, 2022. He stated that moving back to dual approval "would affect the entire PacMoore relationship since they [sic] are on the same

platform." Compl., Ex. 2.  In response, Moore expressed his disapproval of Fifth Third's actions, stating that "[t]his exposes me to an easy theft of funds.  This is a risk I am not willing to take . . . ." *Id.*  Moore stated that PPT's accounts were being used by Glanbia and should be separate from PacMoore's account.  He advised Staunton, "Your team should be separating those accounts immediately . . . ." *Id.*  Moore further stated that "I should have sole administrative authority over the [PacMoore] account.  There should not be anyone else on that account other than my wife." *Id.*  Moore told Staunton that if this was not accomplished within a week, he would close every account at Fifth Third.  PacMoore alleges that contrary to Moore's request, Staunton did not separate the PacMoore and PPT accounts for authorization purposes.  This left Tatina as the sole approver with authority to okay wire transfers from PacMoore's bank account at Fifth Third.

      Despite the fact that Fifth Third did not make the change requested by Moore, Moore did not carry out his threat to close his and his company's accounts at Fifth Third.  Instead, the complaint appears to reflect that he determined, at least in the short term, to work within the new arrangement that PacMoore alleges Fifth Third had unilaterally established.  PacMoore alleges in its complaint that on May 17, 2022, Moore asked Tatina—again, a PPT employee, not a PacMoore employee—to initiate a wire transfer and wire a balance of funds in PacMoore's bank account to Moore's personal Merrill Lynch account.  To initiate the wire transfer, Tatina asked Moore for his personal bank account information.  PacMoore alleges that an unknown third-party hacker intercepted Tatina's e-mail to Moore and provided Tatina with wire transfer information for the hacker's account at KeyBank, not Moore's account.  Tatina proceeded to initiate a wire

3

transfer at Fifth Third to send $207,018.83 from the PacMoore account to the KeyBank account. Fifth Third wired the money based on Tatina's order without seeking authorization from Moore. As a result, the funds were sent to the account of the hacker.

## Discussion

When considering a motion to dismiss a complaint for failure to state a claim under Rule 12(b)(6), the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). To survive the motion, the complaint must include enough facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

PacMoore asserts its claim under section 4A-202 of the Uniform Commercial Code. It reads, in relevant part, as follows:

> **Authorized and verified payment orders**. (a) A payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency.
>
> (b) If a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure, a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if (i) the security procedure is a commercially reasonable method of providing security against unauthorized payment orders, and (ii) the bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer. The bank is not required to follow an instruction that violates a written agreement with the customer or notice of which is not received at a time and in a manner affording the bank a reasonable opportunity to act on it before the payment order is accepted.

810 ILCS 5/4A-202(a) & (b).

PacMoore focuses primarily on section 4A-202(b). It contends that because its agreement with Fifth Third required dual authorization, including by Moore, the payment order at issue was not authorized. But that's not what section 4A-202(b) says. It says that if there is an agreement regarding verification of a payment order, then an order pursuant to the verification process, *whether or not authorized*, is effective under certain circumstances. The statute doesn't say the converse: that if there's an agreed-upon verification procedure, then only payment orders following that procedure are effective. In other words, section 4A-202(b) doesn't displace section 4A-202(a) or provide the means of satisfying that provision; they are two separate paths. *See, e.g., Grabowski v. Bank of Boston*, 997 F. Supp. 111, 123 (D. Mass. 1997) ("Article 4A provides two paths for loss allocation of payment orders: verification by a security procedure and/or authorization by the customer."); *Berry v. Regions Fin. Corp.*, 507 F. Supp. 3d 972, 982 (W.D. Tenn. 2020) ("When a payment order is authorized by the person identified by the sender, security procedures for verifying the authenticity of a payment order are irrelevant.").

PacMoore's complaint establishes that the "person identified as sender"—in this case PacMoore—"authorized the order or is otherwise bound by it under the law of agency," which is all that section 4A-202(a) requires. PacMoore *specifically alleges* that its president, Moore, told Tatina to initiate a payment order with Fifth Third to transfer funds from PacMoore's account. In contending that section 4A-202(a) isn't satisfied, PacMoore relies on the fact that Tatina wasn't an officer or employee of PacMoore but instead was the controller of Glanbia. But being an officer or employee of an entity is

5

not the only way to be that entity's agent. PacMoore affirmatively alleges—indeed, more particularly in this context, it admits—that Moore specifically directed Tatina to authorize a wire transfer from PacMoore's account. If that didn't make Tatina PacMoore's agent for that purpose, it's hard to know what would. Under Illinois law, "An agent has express authority when the principal explicitly grants the agent the authority to perform a particular act." *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 672 (7th Cir. 2004) (internal quotation marks omitted). That's exactly what PacMoore alleges in its complaint. It is conceivable that PacMoore may have a viable claim of some sort against Tatina (or PPT) given the exposure of his e-mail to the hacker, but PacMoore has no viable claim against Fifth Third under section 4A-202.

## Conclusion

For the reasons stated above, the Court grants defendant's motion to dismiss [dkt. no. 19]. Because it is clear from the facts as set out in plaintiff's complaint that it cannot state a viable claim, the Court directs the Clerk to enter judgment dismissing the case with prejudice.

Date: May 1, 2023

_____
MATTHEW F. KENNELLY
United States District Judge